Good morning. May it please the Court, Scott Hunt appearing on behalf of Plaintiff Appellant Matthew Head. This case, this appeal centers around two key issues, the second of which I believe has two subsets. The first issue is whether at summary judgment the trial court erred when it misread this court's ruling in McElindan-Veek County of San Diego and erred by holding the plaintiff was specifically required by that ruling to produce both comparator evidence as well as medical evidence. That is simply a misreading of this court's ruling and is inconsistent with federal law, federal regulations rather, and both Ninth Circuit and First Circuit authority. I cited the Katz case in my briefing for the principle that a motivating factor applies to the ADA. In that case, they also held that or stated that there is certainly no general rule that medical testimony is always necessary to establish disability. When properly applied, when McElindan is properly applied to the facts of this case on summary judgment, there was evidence that my client was substantially limited in not one but a number of major life activities, including sleeping, interacting with others, and reading. So is it your position that an affidavit by the individual who is claiming a disability is sufficient in and of itself to survive summary judgment? Depending on the facts within the affidavit, yes. There is no requirement that medical testimony be presented. In the McElindan case written by Judge Nelson, the court relied upon the defendant's declaration, initially noting that there appeared to be no other evidence regarding the issue of impotence and how that impacted the major life activity of engaging in sexual relations. After noting that there appeared to be no other record evidence regarding the ability to engage in sexual relations, the court went on to say in the declaration himself he states he's impotent, that's enough to survive summary judgment. Of course in that case there were other claims of disability that were medically supported, so in that case the case could stand without regard to that particular impairment. Yes, there was medical evidence on the other major life activities, your honor is correct, but there is nothing in McElindan, McElindan simply can't stand for the principle it's self-applied, relied on the declaration itself solely as to the impotence and major life activity of engaging in sexual relations. Perhaps it wasn't critical in that case because there were additional impairments that were documented medically. I'm just concerned if we have a case where there is no medical support for the disability that we may be reading that case too broadly if we read it to stand for the proposition that a declaration on the part of the claimant is sufficient in and of itself to support a disability. The court doesn't need to make that ruling, your honor. The court simply needs to rule that medical evidence is not required in every case. You don't need to make a ruling that in and of itself a declaration will always be sufficient, but as to the facts of this case, there was sufficient evidence, admissible evidence based on the declaration itself to establish a substantial limitation in a major life activity. In your view, what would be a case where a declaration by the claimant would not be sufficient? Well, obviously you're asking for speculation, a little hypothetical here, but I can see A ruling in this case would not apply simply to this case. I can see a situation such as perhaps epilepsy or diabetes or some medical condition that doesn't necessarily manifest itself in an outwardly apparent manner or a certain type of cancer. What about reading difficulties? Suppose a plaintiff comes in and says, I have a terrible time concentrating on a book at night. I fall asleep. As soon as I start reading, I fall asleep. Is he entitled to go to trial? I would say not on that. The way you presented those facts yourself, the way you structured those facts, I don't believe that would be a severe enough limitation, but worthy to say as in this case that I can only read three to five minutes. Not that I have difficulty. Your choice of difficulty has been rejected in other circuits, and it may not be enough evidence. If he has difficulty and then there are additional facts explaining what that difficulty is, it may be enough. So you're saying that the plaintiff has to come in with a showing, even if it's not a medical showing, of facts that would permit one to find an impairment, not just conclusions. Precisely. And here we have those facts, Your Honor. My client doesn't say, I have difficulty reading and sometimes I don't understand everything, which is so vague that perhaps summary judgment would have been appropriate. My client comes in and says, I have difficulty concentrating. I cannot read more than three to five minutes before things get so jumbled in my mind that I have to stop. Now that is a factual, what is a doctor going to, how is a doctor going to rely on his representations often anyway? A doctor isn't going to change that testimony or by agreeing to it, add anything to the facts that are necessary for the court to rule or for the jury to ultimately rule. Here the question isn't whether it's medical evidence or not. The question is whether the facts presented are sufficient to establish a substantial limitation. And I grant that in certain cases, given certain types of impairments, that there may be cases where medical testimony is necessary. But this is not that case. My next question, what were the impairments or what was the impairment in this case? The impairment was depression, bipolar disorder. And the major life activities that were substantially limited by that are set forth in both of our briefs, but they affected sleep, interacting with others, caring for himself, concentrating and thinking clearly, and reading. Now interestingly, the defendant did not even address the issues of caring for himself, concentrating or thinking clearly. I think one of the simplest ways to look at this, and there's a great deal of detail as to his difficulty sleeping and the fact, the key factor there is that at times he couldn't sleep at all, which brings us back to the McElindan level of limitation in sleeping. In the interacting with others, the McElindan standard requires that the severe problems are characterized such as there are consistently high levels of hostility, social withdrawal, or failure to communicate with others. Here we have, based on plaintiff's testimony, the type of detailed facts to meet that standard. He nearly completely avoided crowds and other social actions. He stayed at home as much as possible. He had trouble interacting with people socially, with people socially other than his immediate family, and at times he could not bring himself to interact with his family. He avoided using the... I have to ask you this question. Yes. Was the plaintiff being treated for these impairments? He was hospitalized not once, but twice for those impairments. Was he on medication for those impairments? Yes. Isn't the case law that if one is being successfully treated for impairments, then that negates a finding of disability? I don't believe it's successfully treated, no. The case law, the Sutton case, Kirkenberg and others, one of which I argued, the Kirkenberg case, it does not stand for the principle that successful treatment, you're able to function because you're on medications, negates the disability. The question is still, is there lingering effects despite the medication that still constitute a substantial limitation? Just as in the McElinden case, despite the fact that the plaintiff was taking medication, he still had difficulty sleeping such that it was sufficient to be a substantial limitation. One of the key factors in the substantial limitation analysis in this case applies to caring for himself and interacting with others and thinking clearly. That is the fact that my client had both suicidal thoughts, which one can argue is not thinking clearly, and he also had homicidal thoughts, which one can argue raises to a level of hostility, as in the McElinden language of interacting with others. My client put a gun to his head at one point due to his suicidal thoughts. My client got a gun and went after his wife's lover, not went after, went looking for his hostility in interacting toward others. It is certainly evidence of not thinking clearly. You've been hospitalized previously for his mental impairments. He was out for a while. He was out for some time in March and April, shortly before being terminated in June. For medical reasons? Yes, for medical reasons and being hospitalized due to these conditions where the depression and bipolar disorder were diagnosed. And he was hospitalized because his anger was, he was so out of control that his family had him hospitalized. That again is evidence of not being able to interact with others. It's evidence of not thinking clearly. Counselor, if we agree with you that there was sufficient evidence to survive a summary judgment on the impairment issue, what about on the discrimination problem? Right. That takes me to the second point, and thank you, Your Honor. I was just about to go there myself. The second key issue in this appeal, obviously, is whether a motivating factor instruction and that standard of proof applies to ADA cases as the vast majority of circuits have held. To all ADA cases, including retaliation or only discrimination cases? Well, the vast majority of cases, our argument, it applies to both. The vast majority of circuits have held that it applies to discrimination cases. What have we held? Excuse me? What has the Ninth Circuit held? The Ninth Circuit has not ruled on that specific issue. It's a case, as far as I understand, it's a case of first impression to the court. Likewise, the retaliation issue, Your Honor. Is there any law supporting your position as far as retaliation is concerned? Yes, I believe there is. I believe the best analysis is the, and I don't like relying upon it, but if it's the best analysis, I'm going to, and that's a North Dakota District Court case that's cited in our materials. That's it? Well, not solely, no. Is that your best case, you said? I think it's the best analysis. I'm not saying it's the only analysis, but this court, in the substantial authority, I'm sorry, not substantial, supplemental authority that we cited to this court, the Stigall case, or Stigall case, applied the motivating factor, mixed motive standard, in a Title VII retaliation case. And I think the court needs to recognize that, one way or another, it is a motivating factor. Either Title VII 2000E2M standard applies by incorporation and reference, or the Price Waterhouse standard applies. In either case, a motivating factor is a proper standard for both discrimination and retaliation. The issue isn't whether it's a, I believe, that properly analyzed. A motivating factor applies in either case, and the issue then becomes what defense the defense is entitled to. Under 2000E2M, Title VII, the motivating factor, if that's incorporated in, then they, their defense, the same action defense, allows me to still get injunctive relief and attorney's fees. Counsel, what is your response to opposing counsel's argument that the amendments to the Civil Rights Act prompted the motivating factor, and no similar amendments have been made to the Americans with Disabilities Act? Well, the Americans with Disabilities Act incorporates Title VII's Section 2000E5. As amended? As amended. Well, yes, as amended. It incorporates Section 2117A of the ADA, and this is the Buchanan analysis, as well as the Katz analysis. What case are you relying upon to support your position that the amendments to the Civil Rights Act are incorporated into the Americans with Disabilities Act, the most recent amendments? I'm sorry to leave the lectern, Your Honor, that the cases are laid out on page 12 of our reply brief, and they're summarized. Excuse me, Counsel. I know there are cases that say generally that the rubric for Title What case authority are you relying upon to support your argument that the most recent amendments to the Civil Rights Act are incorporated into the Americans with Disabilities Act? I believe the Buchanan case that we cite, as well as the Parker and the Baird case that we cite, look at Section 12117A of the ADA, and the reference to the incorporation by the ADA to Section 2000E-5G of Title VII post-1991 Civil Rights Act. And by incorporating the 2000E-5G language, that incorporates the motivating factor language. And the reason it states on a claim in which an individual proves a violation under Section 2000E-2M, and then sets out the same action defense. If the ADA incorporates that enforcement part of Title VII, which has a defense provided for situations where the plaintiff has met the 2000E-2M motivating factor standard, then inherently that motivating factor standard is also incorporated. And you can't have the defense if I'm not allowed to meet the burden initially. Counsel, does that argument ignore the language in the ADA that says because of? No. Because of language is universal throughout Title VII, throughout the ADA, throughout both discrimination and retaliation clauses. Now the one case that holds that the mitigating factor is not enough in discrimination cases is a Sixth Circuit case that relies on Rehabilitation Act case law where it was solely because of. But that was changed knowingly by Congress and the legislative history establishes that that solely because of was taken out for purposes of the ADA in Title VII. And so since the motivating factor applies to both a motivating appeal comes down to whether the court properly applied COSTA. And in this case, it simply did not because there was evidence of under the COSTA standard, there was evidence of discriminatory animus. The court denied directed verdict. There must have been. And there was evidence of one or more other reasons, one of which must be legitimate. And here we have had, just as in Stigall, we had two reasons asserted by the defendant. They got stuck in the mud or they abused, they violated the equipment abuse policy. And we had the evidence supporting that it may be due to the discriminatory action. Or the evidence in the record that the termination was based on discrimination. The evidence is the litany of treatment starting from when he goes out on leave and statements such as if you need daytime work only, you better look for other work. The hassle of getting the multiple releases to come back to work rather than letting it happen at one time so his leave is stretched out two weeks. As well as harsh treatment when he comes back. It's laid out rather extensively in the brief. I'm down to less than one minute. If I may, I don't want to cut the answer short to your honor, but I would like to save some time for rebuttal. The jury found against the plaintiff on the FMLA claim on which the motivating factor instruction was given, why doesn't that establish that there's no prejudice? Because there are different underlying issues. Same facts, all right. The question is when he comes back from the leave, how is he treated when he asks for additional accommodations by only working the day shift, by not working overtime? By asking for those accommodations, and I believe the decision might be different had we been able to put on evidence of him being disabled itself. We'd be able to put on other evidence that related to the termination that we weren't allowed to put on because of the summary judgment. But the essence to your question is that the facts were that he was allowed family medical leave. And so that was a very weak aspect of the case. The facts were much stronger that his requests for accommodation were met with responses such as, if you need full-time, daytime work, you better look for another job. And similar comments and conduct. Certainly that wasn't it. All right. Thank you, counsel. We'll give you one minute for rebuttal. Thank you, Your Honor. Just as a matter of information, the author of the McElindan case was Judge Dorothy Nelson. And she and I have an agreement that we do not take credit for each other's opinions. My apologies, Your Honor. I should have checked the initials. Or blame. Good morning. I'm Bill Graham on behalf of Glacier Northwest. I'd like to take the issues in the same order that the court has already addressed them and start with the summary judgment issue. There's been, I think, a misstatement of what the court's holding really was in terms of the actual disability and record of disability claims that were dismissed in the McElindan case. What Judge Marsh did here and found and says in his opinion is, because of the type of major life activities that are being asserted, that you need to have some specific evidence. Medical evidence? He gave examples. In his opinion, he says, he talks about the McElindan case and he says, you're specifically required evidence such as medical records. What page are you reading from, counsel? This is, I'm reading from the opinion, page six at the bottom. Last paragraph, next to last line. This is Judge Marsh. He referred to the McElindan case and he says in that case the court required evidence such as. I think that gives this court some guidance in terms of the ruling you're going to give. The problem here is this is not a case where it's obvious that the condition or the disability substantially limits the major life activity. Unlike somebody in a wheelchair can't walk, someone who's blind can't read, someone who's deaf can't hear, this is a much more subtle kind of case. We're alleging sleep problems, concentrating, interacting with others. Well, those are common problems everybody in society has to some extent or another. And you can't just come into federal court and give an affidavit and say, I'm substantially limited in sleeping because I have problems sleeping or I have problems interacting with others or thinking clearly. And the other things we're discussing here today. And what Judge Marsh did was say, well, practically, yeah, what is the evidence? You can't just make a naked assertion in an affidavit and get past summary judgment. What he said in his opinion was plaintiff failed to submit any medical evidence or offer a comparative evidence which would support a disability claim. Is that a correct statement? That's correct. Is that a correct ground for granting summary judgment? Well, the problem with the plaintiff here didn't submit any other evidence other than these assertions. And I think the court said, because you don't have medical evidence, because you don't have comparative evidence, because you don't have specific evidence, I don't find you've established for purposes of summary judgment that you have a claim. Why aren't his statements evidence? They would be if he took the stand at trial. It's because the case law says you have to take this analysis on a case-by-case basis. And if it's obvious, you don't need more. In the examples I just gave. Well, that's the same thing the pausing counsel said in support of us crediting the affidavit. Yes, Your Honor. And we've cited, for example, in the sleeping, we've cited a string of cases on sleeping that say the mere fact that you can only sleep two or three hours a night or four or five hours a night doesn't mean you're substantially limited in major life activity. What about reading? For example, how would a plaintiff prove that he has trouble reading, assuming that's a major life activity? Because other than his own statements, there are probably no medical tests that indicate trouble reading unless it's a vision problem. I think that's a good question and a good example of what I'm talking about. He didn't come in and say, I can't read. That would be obvious. I'm unable to read, and that's a major life activity. He says, I can only read for up to five minutes at a time. Now, is that a severe, permanent impact on a major life activity, or is that a problem that a lot of other people in life experience? Taking his facts on their own, we submit and Judge Marsh correctly found, that's not enough. You have to have some other, maybe it's comparative evidence, maybe it's medical evidence, maybe some other type of evidence that that's a severe or significant limitation on the major life activity of reading. Maybe an affidavit from a reading specialist. That would be another one. You could have an expert testimony on that besides medical. Should we look at each of these discrete instances of alleged disability, or should we look at the whole picture? Isn't there kind of an aggregate effect of all of these complaints that he makes? I think they're discrete. The courts have treated them as discrete. In the McAllen case, they looked at each one separately. That's good Ninth Circuit law. In the sleeping situation in McAllen, they found that there was medical testimony that verified that even though he had problems sleeping, he was on medication, those problems persisted. In this case, what Judge Marsh had was the allegation in the affidavit that he could only sleep up to five or six hours a night, but his doctor said in a note on the day before he was terminated that sleep was okay. As opposing counsel pointed out, for the impotence problem, the declaration was accepted in McAllen. What's your explanation for that? I think impotence is different than sleeping. I mean, that's a specific problem. The person that's going to know about that is the person that's impotent. I'm not sure you have to have the wife come in with an affidavit and declare that, although that might be helpful. I think that's a different case. Mr. Head did not claim impotence as a loss of a major life activity here. So you would agree that there are some categories of disability where an affidavit from the person affected would be sufficient? I do agree with that, and I think it's up to the court to ferrule those out, which ones apply. And that's the case-by-case analysis, and I think that's what Judge Marsh did. He carefully went through each of the three things and said, these are the kinds of things you need something a little more of, and you don't have it other than just a bare conclusory assertion in the affidavit, and therefore the summary. How certain would the law be if we adopt a case-by-case approach in terms of determining which disabilities require comparators or medical evidence or some kind of expert, and which ones can be satisfied with an affidavit by the claimant? How certain would the law be if we make that ruling? Well, I think it's done in other areas as well. In this case, what we're suggesting is the court simply find there must be some evidence to verify that, and the trial court must make a reasonable determination based on the evidence presented. If that's an affidavit is sufficient in a case like impotence, fine. If it's a problem sleeping, there's lots of cases that say, well, just that assertion alone is not enough. I think the ability to walk and not walk is like impotence. That seems like, if you can't do it at all, and it's a major life activity, then maybe an affidavit is all that's needed. If it's an activity that you have trouble doing, which is what we're talking about, interacting, sleeping, reading, not saying I can't do those things, but I have problems and I think I'm substantially impaired, then more evidence is required. I think that's the proper standard for the court. Or does that make it an issue of fact? In other words, if he says, I can read for three minutes at a time and then everything gets jumbled and I can't read anymore, that's one. I can read for 10 minutes at a time and then things get jumbled, I can't read anymore. It's somewhere in there, don't you get an issue of fact as to whether that's a requirement? Beyond that assertion, you have to show that that's a significant impairment of a major life activity. That is, is this a very limited number of people or are there millions of people who can't read for more than five minutes at a time? I suggest that may be much more common than what we think. And I think the case law in the ADA, since it was adopted over 10 years ago, has tried to narrow down to have this law just apply to people who are legitimately disabled and have a limitation that affects a major life activity, not the whole much larger group of people who have various problems in life like we all do. And I think that's where the focus ought to be on this case. Let's go over to the jury instructions issue. And I want to flip the argument a little bit because there's really two parts, as we've said in our brief. There's the statutory argument that I'll get into in a minute. But I think you don't even have to go there in this case because what Judge Marsh really found and why he gave a because of instruction was he found this was a single motive case. And I think that's the first issue for this court to analyze. Was that a proper, reasonable decision? Counsel, was that finding consistent with his denial of the directed verdict request? On the regarded as claim? I mean, yes. Yes, I think it is. Was directed verdict solely directed to the regarded as claim? That's my recollection. Yes. The cost of the Ninth Circuit case, which went through the U.S. Supreme Court, explained the difference between single and mixed motive cases. And the way I think of it, using the language, is that a single motive case is an either or. It's either because the person, the decision to terminate was based on a legitimate reason stated by the employer or it was the discriminatory reason asserted by the plaintiff. That's a single motive case? Single motive case, but not both. If it's both, then you have two or more reasons and you move into the mixed motive case. I don't see how that makes it a single motive case because the employer may have been motivated either by the violation of the rule or by discriminatory motive. Well, if he's motivated by both, then it's a single motive case. Or a mixed motive case. How can you get away from that in this case, that the employer was motivated, potentially motivated by either of those motives? Well, I think what the plaintiff is arguing here is that there can be no single motive cases because a plaintiff in every situation would allege, well, this was a mixed case and while I don't agree with why it was terminated, I think it was a discriminatory reason, I want the motivating factor standard. Counsel, explain to us then what's a classic mixed motive case to compare to the single motive paradigm that you've explained. I think you use a pretext analysis like we do in the McDonnell-Douglas chain in summary judgment, although this is a trial case, and that's, is the stated reason false? That's not the reason, and the real reason is the discriminatory reason. In other words, it was a pretext. Isn't that what the plaintiff is claiming in this case? They are claiming it's a pretext case, that he didn't engage in equipment abuse, he didn't do anything wrong, and so he must have been fired because of his disability or in retaliation. Well, that fits your explanation of a mixed motive case, doesn't it? No, it doesn't. Well, explain to us in your view what would exemplify a classic mixed motives case where the court should give the motivated by instruction, the motivating factor instruction. Let's use Costa because that's our circuit here. Costa was a woman that worked in a warehouse, the Desert Palace warehouse, and claimed gender discrimination. She was harassed by her male co-workers. She was disciplined more harshly than her male co-workers. She got a suspension and filed her case. In that case, Costa did not contest or say, well, I didn't do anything wrong. She says, yeah, I did those things. I got into an altercation with a co-worker, and I did some other things I got disciplined for. So the company may have reason to discipline me, but they disciplined me more harshly, or they shouldn't have disciplined me. Another reason was because of my gender and because of my complaint about harassment. So she contested the grounds for disciplinary discharge and claimed that that was the pretext. And, in fact, it was gender discrimination that was the cause for discharge. Well, I think the court found that she, in fact, did not dispute some of the things that the company based their disciplinary decision on, but they found that at least one of the reasons was gender discrimination or retaliation. At least there was a question of fact about that, and that's why the case was sent back to go to trial. So in your mind, whether or not a case becomes a single motive or mixed motive is whether or not the complainant contests the allegations of wrongdoing? Is that the dividing line in your mind? Yeah, or at least completely disputes them. In this case, and we quoted a portion of the trial transcript in our brief, Mr. Head was read the stated written reason for his termination, which said you're being terminated for equipment abuse, and he said, yes, I absolutely disagree with that. All Mr. Head stated in this case was that he'd driven a front-end loader and he'd driven it into this mud hole and got it stuck. But if he claimed discrimination, wouldn't he, by necessity, dispute the existence of a good reason for his discharge? He couldn't very well say, yeah, it's true, I violated the policy, but you're discharging me because of disability. Well, I think this case would be different, Your Honor. I think that's a helpful question for me because if he claimed, well, yeah, I did something wrong. I abused the equipment, but I shouldn't have been fired for it. And other people who have engaged in equipment abuse who weren't disabled didn't get fired for the same thing. And then you move into a mixed mode. Was that a factor that made the difference in the case? He's not claiming that. All that was presented to the trial court here was testimony of whether people had gotten equipment stuck and not gotten fired, but there was no explanation as to whether they had a disability or a prior complaint or not and whether or not they'd engaged in equipment abuse. So he did compare his treatment to that of other people. But they weren't similarly situated. Well, that's the conclusion. That's an argument. But at least there is that element, isn't there, that he was discriminated against because he got more severe discharge discipline than somebody else did. Not as to equipment abuse. This is a pit out in Santosh, which is west of here towards the ocean. It's a big gravel pit. They mine rocks and grind them up and make gravel and sand for concrete. And what Mr. Head's job was was to take a front-end loader, and the day he got fired it was to take the loader, scoop up sand, and drop it into a hopper, which went into the plant and helped mix up product that was shipped out by barges. At some point during the day he took his loader, he saw some water backing up, and he drove into this mud hole to try and apparently clear a drain that he thought was in there to get the water to go down. And he got the loader stuck in, he articulated the loader, it got deeper, and the mud got up and damaged the engine and the transmission and so on. And that's the event that he got fired for. Did the judge find this was a single motive case? Yes. He made that finding on the record? Yes. He said his ultimate decision was he went with his jury instructions to say this was a single motive case because it's a pretext case. It's an either-or. It's not a mixed motive. It could have been that, but it was probably also this. If this isn't a single motive case, I don't know what a single motive case would be. If you have two reasons and he's denying the one reason completely and saying it's got to be this other reason. So your argument is if there's a stark contrast, if you either have to believe one or the other, it's a single motive case. Yes. Is that pretty much your argument? In the limited time I've got left, let me go over to the statutory argument because I think this is a new issue both for this circuit and for other circuits as well. There's no circuit that has analyzed the statutory difference between ADA and Title VII. The Oregon state statute models itself on the ADA. They both use the because of language. The Civil Rights Act amendments in 1991 did not address the ADA. There's been no statute since then that was done for Title VII in 1991, and that was adding the motivating factor. What about opposing counsel's response that cases interpreting the ADA post-1991 have incorporated that motivating factor analysis by inference? I think it's because no one has raised this statutory conflict. They've just kind of lumped it in. Well, here's how Title VII does it. We're going to use it here. But no party that I can find has stood up and said, well, wait a minute. Take a look at the difference between the two statutes. Over in Title VII, you've got this Civil Rights Law amendment that specifically adopted motivating factor. That's never been done with ADA. Title VII clearly doesn't cover disability. What about that? And so that's a new issue for this court. I'll submit there aren't a lot of cases. I don't think the Northern Dakota case, I'm not sure how you pronounce it, Stigall, that didn't address the statutory issue as well. That's an open issue. Is the amendment Title VII in a section that is incorporated in the ADA statute? No. The only thing that was adopted, Your Honor, was the remedial portions, not the determination of liability or discrimination sections. There's a difference between the numbers, and we've explained that in our brief. With the few seconds I've got left, I would point out on the retaliation claim, there's three other circuits. The first, the third, and the tenth have all found that the motivating factor does not apply. And we've cited those cases in our brief as well. Is that the majority or is that a minority position on the retaliation? Are those the only three circuits that have addressed the issue? I think those are the only three that we could find, Your Honor. All right. Thank you, counsel. Thank you. We'll give you one minute for rebuttal. Thank you, Your Honor. Regarding Costa, our position is exactly as was posed. We admit that a plaintiff got stuck in the mud, and our argument is, and we put on comparators to show it, was that his discipline for having had that conduct was more severe than others. It's just like the Costa case where there's an altercation. She doesn't deny the altercation. She gives the details of the altercation. She's disciplined more severely than the other person involved in the altercation, and there's a mixed motive because it may be partly the altercation, it may be partly the discrimination that she put evidence on. Very quickly, as to the directed verdict, look at that. I believe it was to both regarded as and. What's that in the record? Yeah. The low case, the tenth circuit case. What's that in the record? I'm sorry. Where is that in the record? I don't have a – I think it's – I believe it is in the ERs, and I think it may be in my appendix, but it was on the record. He did it in court. It's in the transcript. I believe it may be in the appendix to my reply, Your Honor, the testimony. I'm almost sure it is. Regarding the medical evidence, in the low case, the tenth circuit on a trial case where the expert witness was not available allowed the case to go back on remand based on simply the plaintiff's testimony. Your Honor raised two points I want to confirm should be followed. It is not just a question of discrete features and the conditions affecting discrete features or the aggregate. It's both. You've got to analyze it both ways, particularly important in a situation like a back condition where movement in general may be impacted. Is that supported by case? I believe it is, but I do not have a site for you, Your Honor, but I believe I have read that. I do a lot of speaking on the ADA. I believe I have read that elsewhere, but I cannot provide a site. I'd be happy to look for it for the court. Lastly, the question as to whether the changes in Title VII are incorporated. Those are exactly the changes. It's the Civil Rights Act's 91 amendments that are incorporated into the ADA by Section 12117A, referencing 2000E5G, and I thank your court. But the opposing counsel said that's for the remedy portion and not for the burden of persuasion portion. It's for the remedy portion, which the statutory language within the remedy portion references 2000E2M, a motivating factor, and provides the same act or defense to that. All right. Thank you, counsel.  The next case on calendar for argument is Cooper Smith v. Palmatier. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak